IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD HIRSCH, *et al.*,        : CIVIL ACTION
    Plaintiffs,        :
  v.        :
            :
SCHIFF BENEFITS        :
GROUP, LLC, *et al.*,        :
    Defendants.        : No. 10-2574

## **MEMORANDUM**

PRATTER, J.                                                                       MARCH 25, 2011

**INTRODUCTION**

The Plaintiffs, Richard and Jo Anne Hirsch, are a married couple from Florida. They allege in a five-count Complaint that the Defendants, the Schiff Benefits Group ("SBG") and its principal Matthew Schiff, misled them in order to induce them to create and invest in a premium-financed insurance trust. The Hirschs assert that this investment turned sour, leaving them with losses in excess of $238,000. Counts I and IV of the Complaint allege breach of contract; Count II alleges professional negligence; Count III alleges several violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the CPL"), 73 P.S. §201-1, *et seq.*; and Count V alleges negligent misrepresentation.[1]

SBG and Mr. Schiff have moved to dismiss the Complaint in its entirety. For the reasons set forth below, the Motion to Dismiss will be granted in full.

**JURISDICTION**

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

---

    [1]     The Complaint does not distinguish between the actions of SBG and its principal, Mr. Schiff, and each of the five counts is apparently asserted against both Defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of a motions to dismiss, facts alleged in the Complaint are considered to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). On that basis, the facts are as follows.

The Complaint asserts that in January of 2008, the Richard L. Hirsch Irrevocable Life Insurance Trust ("the Trust") purchased a premium-financed life insurance policy upon the life of Mr. Hirsch from John Hancock Insurance.[2] Premium payments on this policy were financed by a lender, A.I. Credit, which was succeeded by First Insurance Funding ("First"). The Hirschs executed a written guaranty in favor of the lender in connection with the financing plan, and they pledged personal collateral to secure the Trust's obligations.

According to the Hirschs, their decision to enter into this transaction was based on their belief that in five years, there would be a secondary market for the life insurance policy which would assign a value to the policy exceeding the Trust's then-outstanding obligation to First.[3] They say that they had this belief because of an assurance to them by SBG, a licensed Pennsylvania insurance broker, and its principal, Mr. Schiff. They also assert that without this

---

[2] The Trust is not a party to this case, and the Complaint does not identify its trustees or explain its exact relationship to the Hirschs. The Court can only infer that the Hirschs are the Trust's beneficiaries. At oral argument, the Hirschs' counsel asserted that the Trust was created under the laws of Pennsylvania. This alleged fact appears nowhere in the Complaint.

[3] As a general matter, individuals or trusts may choose to transfer the premium obligations associated with a life insurance policy to a third party. This third party then obtains the right to collect death benefits upon the demise of the insured (in this case, Mr. Hirsch).
The resale value of a life insurance policy in a secondary market will depend on many variables, but will typically be substantially lower than the amount of the anticipated death benefit. In some instances, however, the policy's resale value will exceed the premium payments already made by the policy owner (plus interest, where the premium payments were financed by a lender), thereby creating an opportunity for profit.

assurance, the Trust would not have purchased the policy, and they would not have executed the guaranty.[4]

As evidence that SBG and Mr. Schiff "guaranteed" that there would be a secondary market for the insurance policy, the Hirschs cite a letter on SBG letterhead dated December 17, 2007 and signed by Mr. Schiff ("the December 17 Letter"). The use of the word "guarantee" comes from the Complaint, not from the December 17 Letter. Indeed, no quote or excerpt from the Letter appears in the Complaint.[5] The Complaint characterizes the December 17 Letter as a "contract" between the parties, which allegedly obligated SBG and Mr. Schiff to ensure that the Hirschs would bear little or no risk on their investment, at least after the passage of five years.

The Complaint alleges that SBG contacted the Trust's trustee in February of 2010, and announced that the Trust's obligation to the lender would "never" be satisfied by a sale of the policy, because there was actually no secondary market within which the policy could be sold. SBG also apparently advised the trustee and the Hirschs that if the Trust was unable or unwilling to maintain the policy, then it should mitigate its losses by terminating the policy and repaying First. In May of 2010, the Trust surrendered the policy, and the Hirschs had to pay $238,519 to satisfy the Trust's debt to First, which debt had been incurred to pay premiums on the policy.

In their claim against SBG and Mr. Schiff, the Hirschs present two theories of contract

---

[4] Trusts are often used to purchase life insurance policies if an estate tax advisor has counseled that this will prevent the taxation of death benefits as part of the deceased's estate.

[5] The Complaint also describes the December 17 Letter as a "guaranty," traditionally a term of art referring to a promise to answer for the debt of another. Bryan Garner, A DICTIONARY OF MODERN LEGAL USAGE (2d ed. 1995). It is not clear whether the Hirschs are attempting to fit the Letter into this slot, or whether they simply mean a "guarantee" in the more generic sense of a warranty or assurance.

breach. The first, set forth in Count I, is based on the December 17 Letter. The second, which appears in Count IV, seems to suggest that SBG and Mr. Schiff breached an implied agreement to use their "best efforts to research, ascertain, evaluate and formulate recommendations" for the Trust and the Hirschs. This claim is related to the professional negligence claim, presented in Count II. Count III alleges that SBG and Mr. Schiff violated the CPL by (1) failing to comply with the terms of a written guarantee or warranty; (2) misrepresenting the premium-financed life insurance policy by overstating its market value and liquidity; and (3) failing to disclose the fact that they were misrepresenting the policy, and thereby engaging in "deceptive conduct." Finally, Count V presents a negligent misrepresentation claim.

SBG and Mr. Schiff have moved to dismiss Count I on the ground that the December 17 Letter was not a contract, and the contract claim in Count IV on the ground that it is unsupported by facts pled in the Complaint. They seek to dismiss Count II on the basis that Pennsylvania has not identified a cause of action for professional negligence as against insurance brokers, and they attack Count V on the related ground that outside the professional negligence context, plaintiffs are barred from asserting parallel and intertwining contract and tort claims. Finally, SBG and Mr. Schiff seek to dismiss Count III on a theory that the CPL does not provide standing to non-Pennsylvanians.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P.

8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley*, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... ." *Id*. (citations omitted).

To make such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555-556 (courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-184 (3d Cir. 2000) (*citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

In ruling on a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007);

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[6]

**DISCUSSION**

**A.    *Breach of Contract***

At this stage in the litigation, the Court will not parse the syntax of the December 17 Letter. The Court may, however, consider its substance.[7] Taken in isolation, the Letter does not present the traditional form of a contract – nor does it contain any explicit guarantee, or guaranty, or otherwise appear to provide the foundation for a breach of written contract claim.[8] This is not to say that no such claim may exist – only that the Complaint as pled, even if read in conjunction with the Letter itself, does not provide a sufficient factual basis for such a claim. Thus, Count I will be dismissed.

---

[6] SBG and Mr. Schiff have attached the December 17 Letter as an exhibit to their Motion. Generally speaking, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 fn. 9 (3d Cir. 1993). The December 17 Letter is integral to the Hirschs' claim against SBG and Mr. Schiff, and the Hirschs have not contested the authenticity of the version of the Letter attached to the Motion.

[7] *See* fn. 6, *supra*.

[8] The essential elements of a contract are an offer, acceptance and either consideration or a mutual meeting of the minds. *Richter v. Pfundt*, 2009 U.S. Dist. LEXIS 120783, *7 (E.D. Pa. December 24, 2009) (internal citations omitted). The threshold question in this matter is whether the SBG and Mr. Schiff offered to guarantee a market for Mr. Hirsch's life insurance policy. The December 17 Letter, taken alone, does not establish that they did.

B.   *Breach of Implied Contract*

The Hirschs' breach of implied contract claim in Count IV is similarly deficient. Pennsylvania courts have explained the necessary elements of a claim based on an implied contract theory:

> A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. Restatement (Second) of Contracts § 22(2) (1981). "Implied contracts ... arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract."[9]

In other words, a complaint alleging the existence of an implied contract must do more than assert generally and without factual context that the defendants agreed to provide their "best efforts." It must actually allege a fact pattern which might show that there was a meeting of the minds and that there were mutual undertakings. *See In re Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) (an implied contract arises "in circumstances in which the agreement and promise have not been verbally expressed," but where "the agreement is rather inferred from the conduct of the parties"). The Hirschs' Complaint does not do this. Indeed, the Complaint sheds almost no light on the relationship or interactions between the Hirschs and SBG or Mr. Schiff, making the question of whether an implied contract may have existed a matter of pure speculation.[10] As a result, this claim cannot move ahead.

---

[9]   *Ingrassia Constr. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984) (*quoting Pollock Industries, Inc. v. General Steel Castings Corp.*, 201 A.2d 606, 610 (Pa. Super. Ct. 1964)); *see also Rissi v. Cappella*, 918 A.2d 131(Pa. Super. Ct. 2007).

[10]   It should be noted that the term "implied contract" appears nowhere in the Complaint. If the Hirschs actually intended for Count IV to be an *express* contract claim, based

C.  *Professional Negligence*

"To date, the Pennsylvania Courts have allowed professional negligence actions to be maintained only against certain licensed professionals." *Greenwood Land Co. v. Omnicare, Inc.*, 2011 U.S. Dist. LEXIS 767 at *11 (M.D. Pa. January 5, 2011) (*quoting Rapidigm v. ATM Mgmt. Serv. LLC*, 63 Pa. D & C. 4th 234 (Pa. Com. Pl. 2003)). "The [Pennsylvania] Rules of Civil Procedure governing professional liability actions are applicable to attorneys and other persons who are licensed pursuant to an Act of Assembly." *Id.* (*quoting Rapidigm* at 242 n.4). This category includes certain health care providers, as well as accountants, architects, chiropractors, dentists, engineers and land surveyors, nurses, optometrists, pharmacists, physical therapists, psychologists, veterinarians, and persons or entities holding similar licenses in other states. *Id.* (*citing* Pa. R. Civ. P. 1042.1); *Gilmour v. Bohmueller*, 2007 U.S. Dist. LEXIS 64967 (E.D. Pa. 2007) (interpreting the list presented in Pa R. Civ. P. 1042.1 as exhaustive). It does not include licensed insurance brokers. *Cf. Greenwood Land Co.*, 2011 U.S. Dist. LEXIS 767 at *11 (noting that "property management providers are not among the enumerated professionals").

In light of this fact, as well as the fact that the Hirschs have not identified any Pennsylvania cases clearly establishing a plaintiff's ability to maintain a professional negligence claim against an insurance broker with whom a contract allegedly exists,[11] the Hirschs'

---

on some statement or statements made by SBG or Mr. Schiff, then their Complaint would have needed to have alleged such statements in order for Count IV to survive the Motion. A breach of express contract claim does not need to be pled with particularity, but it must at least allege facts which would satisfy the elements of such a claim – including a writing or statement which could constitute an offer.

[11]  In the event a contract claim could go forward, the question of the broker's breach of a duty would presumably be addressed by invoking principles akin to professional negligence. *See, e.g., ACandS, Inc. v. Aon Risk Servs.*, 2004 U.S. Dist. LEXIS 23090 at *2-3 (E.D. Pa. 2004)

8

professional negligence claim against both SBG and Mr. Schiff will be dismissed.

D.      *Negligent Misrepresentation*

The Complaint asserts that the December 17 Letter contained a misrepresentation of material fact – namely, "the value of the premium financed life insurance policy at the end of five years." Conceptually, it is possible for someone to negligently misrepresent the *existing* market for an investment product, and an expert or adviser might be found to be negligent if he or she makes a baseless projection or a projection that fails to consider a rudimentary factor, but it is not possible to "negligently misrepresent" an asset's *future* value.[12]

In light of the fact that the Hirschs have failed to state a negligent misrepresentation claim in Count V upon which relief can be granted, the Court will reserve judgment on the question of whether Pennsylvania's economic loss doctrine might operate to bar such a claim by the Hirschs in any event.[13]

---

("the [Court of Appeals for the] Third Circuit [has] held [that] under Pennsylvania law, an insurance broker who violates its duty to its principal is liable for breach of contract") (*citing Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 657 (3d Cir. 1968)).

[12]     This is true even if the person making the misrepresentation has substantial control over the asset's future price – *e.g.*, if that person has provided a guarantee that he or she will purchase the asset at a given price if no secondary market exists (which is roughly what the Hirschs allege SBG and Mr. Schiff to have done in this case).

At the time someone makes a promise regarding his or her intentions, that person either intends to take the promised action or does not. Therefore, although a claim of *fraudulent* misrepresentation may proceed on the theory that the defendant promised to undertake a certain course of action but actually had no intention of doing so, a *negligent* misrepresentation claim must be based on statements regarding the past or the present, not the future. *See Bennett v. Itochu International, Inc.*, 682 F. Supp. 2d 469, 480 (E.D. Pa. 2010).

[13]     The economic loss doctrine holds – although not without exceptions – that "no cause of action exists for negligence that results solely in economic damages unaccompanied by

E.  *The Consumer Protection Law*

Pennsylvania's CPL makes it unlawful for either individuals or businesses to engage in unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce, 73 P.S. § 201-3. Regulated trade and commerce includes "any [trade or commerce] ... directly or indirectly affecting the people of this Commonwealth." 73 P.S. § 201-2(3).

SBG and Mr. Schiff urge the Court to read this language as prohibiting non-Pennsylvanians from filing suit under the CPL. There are few cases addressing the issue of if and when citizens of other states or countries might have standing to under the CPL. However, since the language of the CPL is at least ambiguous as to this issue,[14] and in the absence of clear guidance from the Pennsylvania state courts, this Court will decline to recognize any *per se* rule barring CPL claims by non-Pennsylvanians.[15]

In this case, it is enough to observe that the Hirschs' Complaint fails to plead any sufficiently substantial nexus between their claims and Pennsylvania. Indeed, beyond asserting that SBG is a Pennsylvania corporation and that Mr. Schiff is a Pennsylvania insurance broker,

---

physical injury or property damage." *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 fn. 3 (Pa. 2009) (internal quotations and citations omitted).

[14]  For a statute to say that it regulates "trade and commerce ... affecting the people of the Commonwealth" is not the same as its saying that it offers protection only to residents.

[15]  As a matter of public policy, such a rule seems dubious. As Judge McClure of our neighboring federal district has said, "declining to provide protection of [the CPL] to individuals who are not residents of the state, but nevertheless engaged in a large transaction entirely within the state, would invite fraud upon non residents engaged in transactions within the state." *Mikola v. Penn Lyon Homes, Inc.*, 2008 U.S. Dist. LEXIS 44201 at *10 (M.D. Pa. June 4, 2008). And as Judge Brody of this district observed in surveying the consumer protection laws of several other states, such laws are generally designed "to either protect state residents *or* protect consumers engaged in transactions within the state." *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000) (emphasis added).

the Complaint makes no reference to the Commonwealth at all. Since the Hirschs have not given the Court any basis on which it could find that the central transaction alleged in the Complaint took place in Pennsylvania or otherwise constitutes trade or commerce "directly or indirectly affecting the people of the Commonwealth," their CPL claim will be dismissed.[16]

**CONCLUSION**

For the reasons set forth above, the Hirschs' breach of contract, professional negligence, Consumer Protection Law and negligent misrepresentation claims will be dismissed. An Order to this effect follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[16] *Cf. Mikola*, 2008 U.S. Dist. LEXIS 44201 at *10-11 (holding that non-resident plaintiffs could bring a CPL claim where the transaction at issue in the case was their building of a house in Pike County, Pennsylvania).