# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD HIRSCH, *et al.*, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| SCHIFF BENEFITS | : | |
| GROUP, LLC, *et al.*, | : | |
| Defendants. | : | No. 10-2574 |

## **MEMORANDUM**

PRATTER, J.                                                                                                                                                                                                                       JUNE 21, 2011

**INTRODUCTION**

The Plaintiffs, Richard and Jo Anne Hirsch, are a married couple from Florida. They allege in a five-count Amended Complaint that the Defendants, the Schiff Benefits Group ("SBG") and its principal Matthew Schiff, misled them in order to induce them to create and invest in a premium-financed insurance trust. The Hirschs assert that this investment turned sour, leaving them with losses in excess of $238,000. Counts I and IV of the Amended Complaint allege breach of contract; Count II alleges professional negligence; Count III alleges several violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the CPL"), 73 P.S. §201-1, *et seq.*; and Count V alleges negligent misrepresentation. This is the Hirschs' second bite at the proverbial apple, the Court having dismissed their first Complaint, which presented the same five basic claims, on March 25, 2011.[1]

SBG and Mr. Schiff have moved to dismiss the Amended Complaint in its entirety. For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

---

       [1]     *Hirsch v. Schiff Bens. Group, LLC*, 2011 U.S. Dist. LEXIS 35588 (E.D. Pa. March 28, 2011) (dismissing breach of contract, professional negligence, CPL and negligent misrepresentation claims against SBG and Mr. Schiff without prejudice).

**JURISDICTION**

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

**FACTUAL AND PROCEDURAL BACKGROUND**

The background of this case is set forth in *Hirsch v. Schiff Bens. Group, LLC*, 2011 U.S. Dist. LEXIS 35588 (E.D. Pa. March 28, 2011).

In short, the Hirschs allege that SBG, a licensed Pennsylvania insurance broker, and Mr. Schiff, its principal, induced them to enter into an investment by guaranteeing them that the value of this investment would increase by the end of five years. This investment worked as follows: (1) an entity called the Richard L. Hirsch Irrevocable Life Insurance Trust ("the Trust") bought an insurance policy upon the life of Mr. Schiff; (2) the Trust financed its premium payments by borrowing from a lending institution; and (3) the Hirschs personally guaranteed the Trust's debt to this lending institution.

The Hirschs anticipated that after five years, the Trust would be able to sell the policy to some third party – *i.e.*, transfer the right to collect benefits in the event of Mr. Hirsch's death – and that the sale price would exceed the Trust's debt to the lender that had financed the premium payments. But Mr. Schiff informed the Hirschs before the end of this five-year period that there would not be a secondary market for the policy, and recommended that they mitigate their losses by terminating the policy and settling the Trust's debt to the lender. They did so, taking a loss of approximately $238,000.

At the core of the Hirschs' case against SBG and Mr. Schiff are two letters that Mr. Schiff sent the Hirschs in December of 2007, before the Trust had purchased the insurance policy. The

Court considered the first of these letters, dated December 17 ("the December 17 letter"), in its opinion dismissing the Hirschs original Complaint, concluding that the Complaint did not plead facts sufficient to show that the December 17 letter constituted a contract between SBG and Mr. Schiff. The Amended Complaint relies upon a second letter, dated December 19 ("the December 19 letter"). According to the Hirschs, Mr. Schiff drafted this second letter because the Hirschs were concerned that the first letter did not assure, unequivocally, that the secondary-market value of the policy would, at the end of five years, exceed the Trust's premium debt to the lender.

The December 19 letter reads, in relevant part, as follows:

> The transaction will be unwound in the fifth year in one of the following three ways: (1) Repayment of the loan from cash (least likely); (2) Life Settlement of the policy equal to the interest and principal on the loan with the remaining face amount kept in your trust; or (3) Life Settlement of the full $5M with the extra cash being paid to your irrevocable trust.
>
> At the end of five years, the trust will be able to sell the policies for an amount in excess of the loan amount and interest. This will release the collateral in full and you will have no further personal obligation on the guarantee after execution of this sale.

The Hirschs argue that the second quoted paragraph – which states that the Trust *will* be able to sell the policy at a profit – should be interpreted as a promise that SBG would provide a secondary market for the policy at the end of five years if none then existed. They further allege that they would not have entered into this investment without such assurance – an assertion that is supported by the existence of the second letter. The December 17 letter did not say that the Trust "will be able to sell the policies for an amount in excess of the loan amount and interest," but instead that "the current life settlement market projects the value of your policy in excess of the outstanding loan value in year 5 and as such should cover the loan interest and principal." Mr. Schiff appears to have modified this language in direct response to the Hirschs' concerns

about the investment's risks, and in order to induce them to invest.

SBG and Mr. Schiff have moved to dismiss all five counts of the Amended Complaint, arguing that it is substantially identical to the first Complaint. Not surprisingly, they downplay the significance of the second quoted paragraph from the December 19 letter, and emphasize the first, which also appeared in the December 17 letter. They argue that this first paragraph makes clear that one possible resolution of the investment was that the Hirschs would end up repaying the Trust's debt to the premium lender in cash – although the letter describes as the "least likely" possibility. They observe that this is indeed what happened.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley*, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... ." *Id*. (citations omitted).

To make such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555-556 (courts must assume that "all the

4

allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-184 (3d Cir. 2000) (*citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

In ruling on a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### DISCUSSION

SBG and Mr. Schiff have moved to dismiss all five counts of the Amended Complaint. The Court will address each count of the Amended Complaint in turn.

**A.**     *Breach of Contract*

In dismissing Count I of the Hirschs' first Complaint, the Court observed that the December 17 letter, "taken in isolation, does not present the traditional form of a contract – nor does it contain any explicit guarantee, or guaranty, or otherwise appear to provide the foundation for a breach of written contract claim." *Hirsch*, 2011 U.S. Dist. LEXIS 35588 at *9.

The Hirschs propose that the December 19 letter, which they claim was drafted in response to their concerns about the ambiguity of the December 17 letter, can be distinguished from the first letter because it states, unambiguously, that "at the end of five years, the trust *will* be able to sell the policies for an amount in excess of the loan amount and interest," and that "this *will* release the collateral in full and you will have no personal obligation on the guarantee after execution of this sale" (emphasis added). The Hirschs argue that by providing them such assurance, SBG and Mr. Schiff were in effect promising to provide a backstop if there was no secondary market for the Trust's policy.

The essential elements of a contract are an offer, acceptance and either consideration or a mutual meeting of the minds. *Richter v. Pfundt*, 2009 U.S. Dist. LEXIS 120783, *7 (E.D. Pa. December 24, 2009) (internal citations omitted). The Hirschs now allege facts that satisfy these basic requirements. The parties appear to have engaged in a bargaining process, during which the Hirschs agreed to invest in the policy in exchange for an assurance from SBG and Mr. Schiff that their investment would be successful.[2] SBG and Mr. Schiff were initially reluctant to make such an assurance – aware, presumably, that investments of this kind always carry risk – but they did so in order to induce the Hirschs to invest.[3] If they have refused to make good on their clear, written assurance that the investment would be a winner, which the Hirschs obtained by bargain,

---

[2] Courts may consider extrinsic evidence of bargaining history in determining whether contract terms are clear or ambiguous. *See Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011).

[3] The fact that the Hirschs bargained for this language suggests that they, too, were aware that the investment carried risk. This fact could doom a standard failure-to-disclose claim under the securities laws, *see Flamm v. Eberstadt*, 814 F.2d 1169, 1173 (7th Cir. 1987) (there can be no materiality if an investor was aware of a fact demonstrating risk), but here it underlines the significance of the Hirschs' insistence upon language assuring that the investment would not fail.

then they may have breached a contract.[4]

B. *Breach of Implied Contract*

Count IV of the Amended Complaint is substantially identical to Count IV of the original Complaint, which the Court interpreted as alleging breach of an implied contract. It shall thus be dismissed for the same reasons that the Court identified in *Hirsch*, 2011 U.S. Dist. LEXIS 35588 at *10-12, and in light of the fact that the Hirschs have not availed themselves of the opportunity to modify this claim in response to its dismissal, Count IV will be dismissed with prejudice.[5]

C. *Professional Negligence*

Count II of the Amended Complaint suffers from the same deficiency as Count II of the original Complaint, which the Court dismissed on the ground that Pennsylvania courts have not allowed professional negligence actions to be maintained against insurance brokers. *Id.* at *12-13 (*citing* Pa. R. Civ. P. 1042.1, setting forth an exhaustive list of licensed professionals against

---

[4] SBG and Mr. Schiff note that the December 19 letter still states that the loan might be repaid with cash, as indeed happened. However, this language does not negate or even necessarily conflict with the letter's assurance that the Trust "will be able to sell the policies for an amount in excess of the loan amount and interest."
  The fact that SBG is a licensed insurance broker is at least tangentially relevant to the Court's analysis of this contract claim because "under Pennsylvania law, an insurance broker who violates its duty to its principal is liable for breach of contract." *Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 657 (3d Cir. 1968). As a result, the question of the broker's breach of a duty may be addressed by invoking principles akin to professional negligence.

[5] A court may dismiss a claim with prejudice where it determines that amendment would be futile. *See Barnard v. Verizon Communs., Inc.*, 2011 U.S. Dist. LEXIS 8948 at *38-40 (E.D. Pa. January 31, 2011) (citing cases).

whom such actions may be maintained). As a result, it will be dismissed with prejudice.[6]

### D. *Negligent Misrepresentation*

The Amended Complaint, like its predecessor, asserts that SBG and Mr. Schiff negligently misrepresented the future value of the Hirschs' investment. However, as the Court has already explained, it is conceptually impossible to negligently misrepresent events that have not yet taken place. *Id.* at *14-15.[7] For this reason, Count V will be dismissed with prejudice.

### E. *The Consumer Protection Law*

In dismissing the Pennsylvania CPL claim in the Hirschs' first Complaint, the Court observed that the CPL governs "any [trade or commerce] ... directly or indirectly affecting the people of this Commonwealth." *Hirsch*, 2011 U.S. Dist. LEXIS 35588 at *16 (quoting 73 P.S. § 201-2(3)). The Court declined to adopt a *per se* rule, recommended by SBG and Mr. Schiff, that would bar CPL claims by non-Pennsylvanians, but concluded that "it is enough to observe that the Hirschs' Complaint fails to plead any sufficiently substantial nexus between their claims and Pennsylvania." *Id.*

---

[6] The Hirschs have cited a Pennsylvania case in which a court allowed the plaintiff to proceed with a professional negligence claim against an insurance broker, *Dardzinski v. Foley Ins. Agency, Inc.*, 2009 Phila. Ct. Com. Pl. LEXIS 178 (August 25, 2009), but the court did so on the ground that the claim was not barred by the economic loss rule, and did not consider whether that claim might fail independently as a result of Pa. R. Civ. P. 1042.1.

[7] The Hirschs adopt a wholly novel theory of negligent misrepresentation in their brief in opposition to the Motion to Dismiss, which, to the extent that it can be discerned, seems to ignore the nontrivial distinction between negligent and fraudulent misrepresentation, and fails to establish any relationship to the factual allegations in the Amended Complaint.

In their Amended Complaint, the Hirschs now assert not only that SBG is a Pennsylvania corporation and that Mr. Schiff is a Pennsylvania insurance broker (facts that also appeared in the first Complaint), but that the Trust, which purchased the insurance policy, is a Pennsylvania trust. These alleged facts are sufficient, taken together, to suggest that the sale of the policy constituted trade or commerce directly or indirectly affecting the people of Pennsylvania.[8]

CONCLUSION

For the reasons set forth above, Counts II, IV and V of the Amended Complaint, which allege professional negligence, breach of implied contract, and negligent misrepresentation, will be dismissed with prejudice. The Motion to Dismiss will be denied with regard to Counts I and III, which allege breach of contract and violation of the CPL.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[8] *See Haggart v. Endogastric Solutions, Inc.*, 2011 U.S. Dist. LEXIS 11289 (W.D. Pa. February 4, 2011) (rejecting defendant's argument that only Pennsylvania residents may bring CPL claims as unsupported by Pennsylvania case law, and allowing plaintiff to proceed where he alleged that the defendant's unlawful activity took place in the Commonwealth); *Mikola v. Penn Lyon Homes, Inc.*, 2008 U.S. Dist. LEXIS 44201 at *10 (M.D. Pa. June 4, 2008) ("declining to provide protection of [the CPL] to individuals who are not residents of the state, but nevertheless engaged in a large transaction entirely within the state, would invite fraud upon non-residents engaged in transactions within the state"); *see also Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000) (observing that consumer protection laws are generally designed "to either protect state residents or protect consumers engaged in transactions within the state").